Jason S. Hartley (SBN# 192514)
Jason M. Lindner (SBN# 211451)
**HARTLEY LLP**
101 West Broadway, Suite 820
San Diego, CA 92101
Telephone: 619-400-5822
*hartley@hartleyllp.com*
*lindner@hartleyllp.com*

George A. Hanson (*pro hac vice*)
Alexander T. Ricke (*pro hac vice*)
Caleb J. Wagner (*pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: 816-714-7100
*hanson@stuevesiegel.com*
*ricke@stuevesiegel.com*
*wagner@stuevesiegel.com*

*Additional Plaintiff's Counsel Listed on Signature Page*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| ROBERT PLATT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SODEXO, S.A. and SODEXO, INC.<br><br>Defendants. | Case No. 8:22-cv-2211 DOC (ADSx)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Pursuant to Federal Rule of Civil Procedure 15(a)(1), Plaintiff Robert Platt ("Plaintiff") brings this First Amended Class Action Complaint against Sodexo, S.A. and Sodexo, Inc. ("Sodexo" or "Defendants"), individually and on behalf of all others similarly situated. Plaintiff makes the following allegations based upon

1

personal knowledge as to his own actions and upon information and belief as to all other matters.

**NATURE OF THE ACTION**

1.     Sodexo is a multinational food services enterprise headquartered in France, with more than 100,000 employees in the United States, including in California. For those U.S.-based employees to maintain health insurance coverage under a Sodexo-sponsored plan, they must declare whether they use nicotine products. Those who do use nicotine products[1] are required to pay an additional fee of $1,200 per year—hereafter referred to a "nicotine surcharge"—to maintain coverage.

2.     Nicotine surcharges of this sort have proliferated in recent years. But to be legal, they must strictly comply with the terms of the Employee Retirement Income Security Act (ERISA), applied to medical plans by the Patient Protection and Affordable Care Act, and implementing regulations. Sodexo did not do so, and therefore collected the nicotine surcharge in violation of the law and in violation of its fiduciary duties to plan participants.

3.     More specifically, ERISA's anti-discrimination provisions prohibit any medical plan from charging an extra premium or fee based on any health status related factor, including tobacco use, unless that fee is part of a *bona fide* "wellness program". And to qualify as a compliant wellness program, a company must offer a "reasonable alternative standard" (for example, a smoking cessation program), by which a participant can receive the program's "full reward"; that is, avoid the surcharge for the *entire* plan year, and must provide notice that such an alternative exists in every communication regarding the surcharge.

---

[1] Other than those enrolled in a Hawaii or Puerto Rico medical plan.

2

4.      But a Sodexo plan participant that completed the alternative program would only be eligible to avoid *part* of the surcharge that plan year, a fact that was made clear in the company's plan documents providing general information and notice on the nicotine surcharge to plan participants. Thus, the surcharge violates ERISA's anti-discrimination requirements, and its collection by Sodexo was and remains unlawful.

5.      Robert Platt is a long-time Sodexo employee working as a quality control assurance manager in California who was required to pay the illegal surcharge to maintain health insurance coverage. He brings this lawsuit individually and on behalf of all similarly situated plan participants and beneficiaries, seeking to have these unlawful fees returned, and for plan-wide relief under 29 U.S.C. § 1109.

### **PARTIES, JURISDICTION, AND VENUE**

6.      Plaintiff Platt is a citizen of the state of California. At all times relevant to this suit, he has been employed by Sodexo within the state of California and has paid the company's medical plan's premiums and nicotine surcharge within the state of California.

7.      Defendant Sodexo, S.A. is a *societe anonyme* organized under the laws of the Republic of France.

8.      Defendant Sodexo, Inc. is a wholly owned subsidiary of Defendant Sodexo, S.A. It is a Delaware corporation with its principal place of business in the state of Maryland.  Sodexo, Inc. employed Plaintiff Platt (and many other similarly situated employees) in California.

9.      Defendants are represented by counsel in this lawsuit and can be served with this First Amended Complaint through its counsel of record.

10.     At all times relevant to this lawsuit, Defendants operated one or more medical plans (hereafter referred to as "the plan" or "the Sodexo plan"), which were available for Sodexo employees, retirees, and their dependents. The Sodexo plan is

an employee benefit plan subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1003(a).

11. Plaintiff is a "participant" in the plan pursuant to 29 U.S.C. § 1102(7).

12. This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal statute. It also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of class members exceed $5,000,000.00, exclusive of interest, attorneys' fees, and costs; and (3) Defendants and at least one class member are citizens of different states, and/or are a citizen or subject of a foreign state, and at least one class member is a citizen of a state.

13. This Court has personal jurisdiction over Defendants in this case because the claims of Plaintiff and all others similarly situated arise from the acts and omissions of Defendants with respect to their activities and conduct concerning Plaintiff within the state of California, and Defendants have purposefully availed themselves of the privilege of conducting business within the state of California.

14. Venue is proper in this District under 2 U.S.C. § 1132(e)(2) because this is the District in which the statutory breach took place, as Plaintiff resides and receives benefits under the plan in Orange County, California, and is a District where a defendant resides or may be found.

## FACTUAL ALLEGATIONS

**a.     Sodexo's Nicotine Surcharge is a *Prima Facie* Violation of ERISA's Anti-Discrimination Rule.**

15. As a baseline rule, and to broaden access to affordable health insurance coverage, the Patient Protection and Affordable Care Act amended ERISA to prohibit any health insurer or medical plan from discriminating against any participant in providing coverage or charging premiums based on a "health status-

related factor", including the use of tobacco. Pursuant to this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

16.   On its face, Sodexo's nicotine surcharge violates this provision. Plaintiff and all others similarly situated were required to pay an additional "premium or contribution" of $1,200 per year based on a "health status-related factor", that being their use of nicotine products.

17.   Specifically, at all times relevant to this lawsuit, pursuant to Sodexo's medical plan rules, any employee who used any nicotine products, including cigarettes, e-cigarettes, vaping, hookah, cigars, pipe tobacco, snuff, or chewing tobacco within twelve months preceding enrollment in the plan were required to declare themselves to be nicotine users as part of the enrollment process. Persons declared to be nicotine users were charged an additional $23.08 per week, or $1,200 per year, to maintain coverage.

18.   Payment of the $1,200 per year nicotine surcharge was required for Plaintiff and all others similarly situated to remain insured under the Sodexo plan. Pursuant to company policy and the terms of Sodexo's Summary Plan Description, failure to truthfully declare oneself a nicotine user would be deemed a "fraudulent act" that could void coverage and result in civil penalties and criminal charges. Plaintiff and all others similarly situated have in fact paid the nicotine surcharge.

19.   Sodexo is and has been required to make contributions to the plan to ensure that it remains adequately funded. By collecting the nicotine surcharge,

Sodexo has reduced the amount of its own contributions, thereby increasing the company's profits.

20.    At all times relevant to this lawsuit, Sodexo has maintained sole control of the nicotine surcharge program, including by determining which plan participants are required to pay the surcharge, withholding participants' funds from their paychecks to pay the surcharge, and determining which employees are reimbursed for the tobacco surcharge.

> **b.    Sodexo Cannot Avail Itself to ERISA's Safe Harbor for Wellness Programs.**

21.    As an exception to its anti-discrimination rule, ERISA carves out protection for "programs of health promotion and disease prevention", also known as "wellness programs."  29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(b)(2)(B).

22.    But to qualify as a lawful wellness program, a plan must fully comply with a set of statutory and regulatory requirements. Those requirements concern (1) the frequency of the opportunity for a participant to qualify for the reward; (2) the size of the reward; (3) reasonable design of the program; (4) uniform availability and reasonable alternative standards; and (5) notice of the availability of a reasonable alternative standard. 29 C.F.R. § 2590.702(f). These regulations "set forth criteria for an *affirmative defense* that can be used by plans and issuers in response to a claim that the plan or issuer discriminated under the [] nondiscrimination provisions." *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158 at 33160 (June 3, 2013) (emphasis added). Every one of the requirements "must be satisfied in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*

23.    Sodexo's nicotine surcharge program did not and does not satisfy the requirements that it provide a reasonable alternative standard, or that it provide

notice of a reasonable alternative standard. As a result, it cannot meet each element of its affirmative defense.

24. Consequently, Sodexo is not entitled to safe harbor protection for operating a compliant wellness program and its assessment of its nicotine surcharge constitutes unlawful discrimination based on a health status-related factor.

### c. Sodexo's Nicotine Surcharge Program Did Not Provide for a Reasonable Alternative Standard

25. By law, a nicotine surcharge is an example of an "outcome-based" and "health contingent" wellness program. 78 Fed. Reg. 33158 at 33161 ("An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking . . .) in order to obtain a reward."); *see also id.* at 33159 ("Examples of health-contingent wellness programs in the proposed regulations included a program that imposes a premium surcharge based on tobacco use")

26. To be lawful, such a program must provide for "[u]niform availability and reasonable alternative standards." 29 C.F.R. § 2590.702(f)(4)(iv). "[A] reasonable alternative standard must be provided to all individuals who do not meet the initial standard, to ensure that the program is reasonably designed to improve health and is not a subterfuge for underwriting or reducing benefits based on health status." 78 Fed. Reg. 33158 at 33160.

27. A common means by which plan administrators attempt to provide a reasonable alternative standard to a tobacco surcharge is to permit participants to avoid the surcharge by attending a smoking cessation program.

28. That is the method Sodexo has attempted to implement this requirement. Its plan information documents make clear that participants can eliminate the surcharge going forward by attending a qualifying smoking cessation program.

29.     But for an alternative standard (such as attending a smoking cessation program) to be deemed "reasonable" under the law, "[t]he full reward under the outcome-based wellness program must be available to all similarly situated individuals." 29 C.F.R. § 2590.702(f)(4)(iv). Thus, a participant who meets the alternative standard must be eligible to avoid the surcharge in its entirety for a given plan year.

30.     The applicable regulatory guidelines state that "while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, *the plan or issuer must provide the premium discounts for January, February, and March to that individual*.) Plans and issuers have flexibility to determine how to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) as long as the method is reasonable and the *individual receives the full amount of the reward*." 78 Fed. Reg. 33158 at 33163 (emphasis added).

31.     But a Sodexo employee who completed the alternative standard during a given plan year would not be eligible to avoid the entire $1,200 nicotine surcharge. Instead, he or she could avoid the surcharge *on a going-forward basis only* but would not be eligible to receive a reimbursement for surcharge payments already made in that plan year.

32.     Sodexo's plan documents state as much explicitly. One information sheet provided to participants states the following:

8

> **8. Q. If I use nicotine products and join a smoking/tobacco cessation program during the year, can I get reimbursed for the surcharge that was taken out of my pay?**
> **A.** No. Once you have joined a smoking/tobacco cessation program and have changed your answer to the nicotine status question on SodexoBenefitsCenter.com, then the nicotine surcharge will no longer be deducted from your pay, but you will not be reimbursed for the money that was already deducted for the surcharge.

33. Because a plan participant could not receive a retroactive reimbursement to avoid the nicotine surcharge in its entirety, Sodexo's alternative standard does not permit participants to receive the "full reward" and is therefore not a "reasonable alternative standard."

**d.** **Sodexo Failed to Provide Notice of Availability of a Reasonable Alternative Standard**

34. Additionally, to be deemed a lawful wellness program, "[t]he plan or issuer must disclose *in all plan materials describing the terms of an outcome-based wellness program . . .* the availability of a reasonable alternative standard to qualify for the reward." 29 C.F.R. § 2590.702 (emphasis added); 42 U.S.C. § 300gg-4(j)(3)(E). "[A] plan disclosure that references a premium differential based on tobacco use . . . must include this disclosure. 78 Fed. Reg. 33158-01 at 33166.

35. But multiple Sodexo plan documents discussing the nicotine surcharge do not disclose the existence of a reasonable alternative standard by which it can be avoided.

36. For instance, Sodexo's annual enrollment guide, titled "Benefits for Life's Moments", contains the following statement regarding the nicotine surcharge:

9

**Nicotine surcharge**

If you're enrolling in medical or group term life insurance for the first time, you must disclose any nicotine use. If you answer "yes," you'll be charged an annual $1,200 nicotine surcharge ($23.98 per week).[1] If you use nicotine products and wish to quit, consider enrolling in a smoking cessation program. Most Sodexo medical options offer free programs to help you quit. Check your medical plan or contact LifeWorks for more information.

[1] The nicotine surcharge does not apply to Hawaii and Puerto Rico medical plans or employees covered under the terms of a collective bargaining agreement.

37.     No additional discussion of the nicotine surcharge is contained in this plan document.  There is no information in this document regarding avoiding the surcharge through a reasonable alternative standard.

38.     Though the materials note that a participant may enroll in a smoking cessation program, they do not disclose that such a program is an alternative standard by which a participant may qualify for the award (that is, avoid the surcharge).

39.     Likewise, as alleged *infra*, another plan document contains the following statement:

8.  Q. If I use nicotine products and join a smoking/tobacco cessation program during the year, can I get reimbursed for the surcharge that was taken out of my pay?
    A. No. Once you have joined a smoking/tobacco cessation program and have changed your answer to the nicotine status question on SodexoBenefitsCenter.com, then the nicotine surcharge will no longer be deducted from your pay, but you will not be reimbursed for the money that was already deducted for the surcharge.

40.     Thus, though this document describes an alternative means by which a participant could avoid the surcharge prospectively—enrolling in a smoking cessation program—it does not disclose a means a participant could receive the "full reward" for the plan year.

10

41. As a result, the plan document provides notice of a program that, as a matter of law, does not contain a *reasonable* alternative standard.

42. Sodexo, then, has not complied with the requirement that it provide notice of the availability of a reasonable alternative standard by which a plan participant could avoid the nicotine surcharge and therefore receive the full reward.

## <u>CLASS ACTION ALLEGATIONS</u>

43. <u>Class Definition</u>: Plaintiff bring this action individually and on behalf of all other similarly situated individuals. Pursuant to Federal Rules of Civil Procedure 23(b)(3), 23(b)(1)(B), 23(b)(2), and/or 23(c)(4), Plaintiff seeks certification of a class consisting of:

> All persons within the United States who paid Sodexo's nicotine surcharge in connection with any Sodexo plan at any time from six years prior to the filing of the Complaint to the present.

44. Excluded from the Class are the Court and its officers, employees, and relatives; Sodexo and its subsidiaries, officers, and directors; and governmental entities.

45. <u>Numerosity</u>: The Class consists of members so numerous and geographically dispersed that joinder of all members is impracticable, as Sodexo employs thousands of similarly situated individuals across the United States.

46. All members of the Class are ascertainable by reference to objective criteria, as Sodexo has access to addresses and other contact information for Class members that can be used for notice purposes.

47. <u>Common Questions of Law and Fact Predominate</u>: There are many questions of law and fact common to Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual members of the Class. Indeed, the claims of *every* class member will rise or fall on the question

of whether the nicotine surcharge is compliant with all legal requirements, and therefore lawful.  Common questions include:

a.  Whether Sodexo's nicotine surcharge discriminates against plan participants based on a health status-related factor;

b.  Whether Sodexo's nicotine surcharge program qualifies for statutory safe harbor protection as a compliant wellness program;

c.  Whether Sodexo can meet every element of its statutory affirmative defense for operating a compliant wellness program;

d.  Whether Sodexo's offer of enrollment in a smoking cessation program constitutes a reasonable alternative standard by which a participant could receive the full reward of the nicotine surcharge program;

e.  Whether enrollment in the smoking cessation program would allow a participant to be retroactively reimbursed for surcharge payments previously made in a given plan year;

f.  Whether eliminating the nicotine surcharge on a prospective-only basis allows a participant to receive the full reward of the nicotine surcharge premium differential;

g.  Whether all of Sodexo's plan materials describing the nicotine surcharge give notice of a reasonable alternative standard by which a plan participant may receive the full reward;

h.  Whether a plan document that describes the nicotine surcharge and notes the existence of a smoking cessation program, but does not disclose that enrollment in a smoking cessation program will allow a plan participant to avoid the surcharge gives adequate notice of a reasonable alternative standard;

12

i. Whether a plan document that describes the nicotine surcharge and states that it can be avoided on a prospective basis by enrolling in a smoking cessation program, but states that enrollment in the smoking cessation program will not allow a participant to recoup nicotine surcharge payments already made in the plan year gives notice of a reasonable alternative standard;

j. Whether Sodexo's nicotine surcharge violates the law;

k. Whether Sodexo's nicotine surcharge violates the terms of the Sodexo medical plan; and

l. Whether Sodexo breached its fiduciary duties with respect to its collection and retention of the nicotine surcharge.

48. <u>Typicality</u>: Plaintiff's claims are typical of other members of the Class because all the claims arise from the same course of conduct by Sodexo—its collection of an unlawful surcharge—and are based on the same legal theories.

49. <u>Adequacy of Representation</u>: Plaintiff is an adequate class representative because his interests do not conflict with the interests of the Class members whom he seeks to represent. Plaintiff has retained counsel with substantial experience in prosecuting complex class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of Class members and have the financial resources to do so. The Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

50. <u>Superiority of Class Action</u>: Class treatment is superior to individual treatment, as it will permit a large number of similarly situated persons to prosecute their respective class claims in a single forum, simultaneously, efficiently, and without unnecessary duplication of evidence, effort, and expense that numerous individual actions would produce.

51. To the extent not all issues or claims, including the amount of damages, can be resolved on a class-wide basis, Plaintiff invokes Federal Rule of Civil

Procedure 23(c)(4), reserving the right to seek certification of a class action with respect to particular issues, and Federal Rule of Civil Procedure 23(c)(5), reserving the right to divide the class into subclasses.

## PLAINTIFF'S CLAIMS ARE NOT SUBJECT TO ARBITRATION

52.     Plaintiff believes Sodexo will argue his claims are subject to arbitration under two arbitration agreements.  However, Plaintiff's claims are either expressly outside the scope of the arbitration agreements, are not arbitrable as a matter of law, and/or the agreements are unenforceable.

53.     First, Sodexo has represented to Plaintiff that, on or about November 2015, Sodexo sent an email to each of its employees, which contained a lengthy arbitration provision (hereafter referred to as the "employment arbitration clause"). The email communication stated that employees would have the right to opt out by submitting a form within a period of 60 days, and if they did not, they would be "deemed to have agreed to be bound by the new arbitration agreement."

54.     But by its own terms, the employment arbitration clause has no application to this suit. It states that "The following claims are not covered by this Agreement: . . . claims under an employee benefit or pension plan that specifies a different arbitration procedure."

55.     The Sodexo medical plan is such an employee benefit plan that "specifies a different arbitration procedure." On or about January 2021, Sodexo modified the terms of the plan to include an arbitration provision (hereafter referred to as the "plan arbitration clause"). The terms of the plan arbitration clause state the following:

> Any claim under ERISA or otherwise with respect to the Plan, other than a claim for benefits under Section 502(a)(1)(B) of ERISA ("Arbitration Claims") shall be submitted to binding arbitration administered by the American Arbitration Association ("AAA"), in accordance with its rules. Arbitration Claims shall be brought in a party's individual capacity, and not as a plaintiff or class member in any

14

purported class or representative proceeding. All aspects of the arbitration shall be governed by ERISA, and to the extent not preempted, the laws of the State of Maryland. The parties shall bear their own legal fees and costs for all Arbitration Claims. Except as may be required by law or to enforce an award, neither a party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of the parties. No Arbitration Claims may be brought more than two years after the Arbitration Claim arises (but in no event later than any otherwise legally applicable period of limitations on such Arbitration Claim).

56.    But while these provisions demonstrate that Sodexo has an arbitration *policy*, neither arbitration clause reflects an arbitration *agreement*. Plaintiff was not put on notice that he was to be bound to mandatory arbitration, nor did he take any affirmative action to demonstrate assent to be bound. Without a contract that is binding and enforceable under California law, Plaintiff cannot be forced into individual arbitration.

57.    Specifically, the plan arbitration clause was added to the plan materials surreptitiously by Sodexo, without any manifestation of assent by Plaintiff or other plan participants.

58.    After the plan was modified to include the plan arbitration clause, Sodexo sent an email to plan participants advising them that there had been changes or corrections to the previous Summary Plan Descriptions associated with a plan that they were participating in and including a hyperlink to the plan's summary of material modifications. Nothing in the email mentioned arbitration, relinquishment of the right to sue, or otherwise put recipients on notice that they would be subject to binding arbitration. The plan arbitration clause was inserted into the Summary Plan Description on page 153 of a 170-page document.

59.    Plaintiff and the Class took no affirmative action to manifest assent to be bound by the plan arbitration clause. They did not sign it, did not check a box or

15

click a button accepting it, or otherwise perform any action indicating their agreement to it.

60. Further, the plan arbitration clause is rife with terms that are unconscionable, unlawful, and/or otherwise unenforceable. For instance, they require an arbitration claimant to bear his or her own legal fees and costs, in violation of ERISA, which permits the recovery of attorney's fees and costs. 29 U.S.C. 1132(g). They also purport to shorten the statutory limitations period for all claims to two years, in violation of 29 U.S.C. § 1110. And, as discussed more fully below, they attempt to prospectively waive a claimant's right to represent the plan and seek plan-wide relief under 29 U.S.C. § 1109 by prohibiting any "representative proceeding" and permitting arbitration only "in a party's individual capacity."

61. The plan arbitration clause set out in the Summary Plan Description does not include a severability provision.

62. As a result of these unconscionable, unlawful, or otherwise unenforceable terms, and because they cannot be excised without effectively rewriting the arbitration clause and/or undermining the meaning and core purpose of the provision, the plan arbitration clause cannot be enforced under Cal. Civ. Code § 1670.5.

63. Additionally, two of Plaintiff and the Class's claims categorically are not subject to individual arbitration, regardless of the enforceability of Sodexo's terms:

a. Plaintiff's claim for breach of fiduciary duty (Count III) is brought not in his own individual capacity, but rather on behalf of the plan itself and to recover losses to the plan and profits improperly made by Sodexo using plan assets, as is authorized and required under ERISA. *See* 29 U.S.C. § 1109. Sodexo's plan arbitration clause, however, only permits arbitration "in a party's individual capacity" and precludes any

16

"representative proceeding." But any ERISA fiduciary duty action under 29 U.S.C. § 1109 is inherently representative in nature; the plaintiff *necessarily* represents the plan and seeks relief that inures to the plan as a whole. Sodexo's representative action waiver would therefore operate to require Plaintiff to have prospectively waived his statutory rights under ERISA, and therefore prevents the effective vindication of ERISA. As a result, they cannot be enforced.

b. Plaintiff's claim for benefits under ERISA § 502(a)(1)(B); 29 U.S.C. § 1132(a)(1)(B) (Count IV) is expressly excluded from the scope of Sodexo's arbitration terms. Because it is not a covered claim, it may be asserted in court even if the arbitration terms are valid and enforceable. Moreover, the Department of Labor's regulations preclude the adoption of mandatory arbitration provisions for benefits claims. *See* 29 C.F.R. § 2560.503-1(c)(4).

## COUNT I – ERISA STATUTORY VIOLATION
**Unlawful Surcharge – Failure to Provide a Reasonable Alternative Standard**
*By Plaintiff and the Class*

64. Plaintiff hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

65. To enroll in a Sodexo medical plan, Plaintiff and class members were required to pay a nicotine surcharge in the amount of $1,200 per year.

66. Sodexo's nicotine surcharge is not and was not a permissible wellness program, because it did not provide for a reasonable alternative standard, in that:

a. Though the plan allowed a participant an alternative means to avoid *part of* the nicotine surcharge by enrolling in a smoking cessation program, doing so did not grant a participant the right to receive the "full reward";

17

    b. A nicotine user who enrolled in an authorized smoking cessation program would no longer have the surcharge deducted from his or her pay going forward, but would not be reimbursed for surcharge payments already made during that plan year;

    c. A participant who completed the alternative standard during a given plan year would not be eligible to receive the "full reward" of the nicotine surcharge program, that being a $1,200 reduction in premium costs to maintain medical coverage; and

    d. Because a participant could not receive the "full reward", the plan did not provide for a reasonable alternative standard.

67. Sodexo cannot meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

68. Sodexo's nicotine surcharge has discriminated against, and continues to discriminate against, plan participants based on a health status-related factor is assessing premiums or contributions, in violation of 29 U.S.C. § 1182(b).

69. 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

70. Plaintiff and class members were required to pay an illegal fee, and Sodexo collected that fee from them in violation of the law. Equity requires that those funds be returned.

**COUNT II – ERISA STATUTORY VIOLATION**
**Unlawful Surcharge – Failure to Give Required Notice**
*By Plaintiff and the Class*

71. Plaintiff hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

72. To enroll in a Sodexo medical plan, Plaintiff and class members were required to pay a nicotine surcharge in the amount of $1,200 per year.

18

73. Sodexo's nicotine surcharge is not and was not a permissible wellness program, because Sodexo did not give statutorily required notice of reasonable alternative standard, in that:

   a. One plan document, an enrollment guide, discussed the nicotine surcharge, but did not disclose the availability of an alternative standard—such as a smoking cessation program—by which the surcharge could be avoided;

   b. Another plan document, an information sheet addressing the nicotine surcharge, stated that the surcharge could be avoided by enrolling in a smoking cessation program on a going-forward basis only, and that a plan participant who attended a smoking cessation program would therefore not be eligible to receive the full reward of the nicotine surcharge program for the plan year; and

   c. As a result, Sodexo plan materials described the nicotine surcharge program without providing adequate notice of a reasonable alternative standard by which the surcharge could be avoided.

74. Sodexo cannot meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

75. Sodexo's nicotine surcharge has discriminated against, and continues to discriminate against, plan participants based on a health status-related factor is assessing premiums or contributions, in violation of 29 U.S.C. § 1182(b).

76. 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

77. Plaintiff and class members were required to pay an illegal fee, and Sodexo collected that fee from them in violation of the law. Equity requires that those funds be returned.

19

## COUNT III – ERISA BREACH OF FIDUCIARY DUTY
### 29 U.S.C. § 1109
### *By Plaintiff and the Class, On Behalf of the Plan*

78.   Plaintiff hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

79.   At all times relevant to this lawsuit, Sodexo was the administrator of the Sodexo medical plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29 U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting management of the medical plan and disposition of its assets by holding in trust the funds collected from the nicotine surcharge, and had discretionary authority and discretionary responsibility in the administration of the medical plan.

80.   Sodexo breached its fiduciary duty by assessing and collecting the nicotine surcharge in violation of the law and in violation of the terms of the plan, as the receipt of additional funds reduced its own costs associated with funding the plan and forestalled its own obligations to make contributions thereto.

81.   Upon information and belief, Sodexo's responsibility with respect to the funding of the plan's claims and administrative expenses relating to the plan's self-funded arrangements equaled the amount by which the plan's claims and administrative expenses exceeded all participant contributions, including the nicotine surcharge funds, Sodexo's collection of the nicotine surcharge diminished the amount Sodexo had to contribute to the plan, thereby benefiting Sodexo and harming the plan.

82.   As a result of the imposition of the nicotine surcharge, Sodexo enriched itself at the expense of the plan, thereby resulting in it receiving a windfall.

83.   Sodexo breached its fiduciary duties under ERISA in that it:

    a.   failed to act solely in the interest of the participants and beneficiaries of the medical plan and for the exclusive purpose of providing

20

benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(A);

b. failed to discharge its duties in accordance with the documents and instruments governing the medical plan insofar as the documents and instruments are consistent with ERISA, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(D);

c. caused the medical plan to engage in transactions that Sodexo knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the health plan, in violation of ERISA. *See* 29 U.S.C. § 1106(a)(1)(D);

d. dealt with assets of the medical plan in Sodexo's own interests in violation of ERISA. *See* 29 U.S.C. § 1106(b)(1);

e. acted on behalf of a party whose interests were averse to the interests of the medical plan or the interests of its participants and beneficiaries, in violation of ERISA. *See* 29 U.S.C. § 1106(b)(2); and

f. caused the health plan to require participants to pay a premium or contribution which was greater than such premium or contribution for a similarly situated participant enrolled in the health plan on the basis of a health status-related factor in relation to the participant or to an individual enrolled under the health plan as a dependent of the individual, in violation of ERISA. *See* 29 U.S.C. § 1182(b).

84. As a result of these breaches, and pursuant to 29 U.S.C. § 1109, Sodexo is liable to make good to the plan all losses to the plan resulting from its breaches, disgorge all unjust enrichment and ill-gotten profits, and to restore to the plan and/or a constructive trust all profits it acquired through its violations alleged herein and

21

which it made through use of assets of the plan, and for such other equitable or remedial relief as is proper.

85. Plaintiff is authorized to bring this action on behalf of the plan pursuant to 29 U.S.C. § 1132(a)(2).

## COUNT IV – CLAIM FOR BENEFITS UNDER ERISA § 502(a)(1)(B)
**Violation of the Terms of the Plan**
*By Plaintiff and the Class*

86. Plaintiff hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

87. ERISA § 502(a)(1)(B); 29 U.S.C. § 1132(a)(1)(B) provides that a participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

88. A participant's right to avoid paying an increased cost to maintain coverage under the terms of a plan is a "benefit" within the meaning of ERISA § 502(a)(1)(B); 29 U.S.C. § 1132(a)(1)(B).

89. Sodexo maintains a Plan Document, which constitutes the "written instrument" by which its medical plan is "established and maintained" as required by 29 U.S.C. § 1102(a)(1).

90. Nothing in the Plan Document authorizes or permits Sodexo to assess a nicotine surcharge on plan participants as a condition to maintain medical coverage. In fact, the Plan Document makes no mention of the nicotine surcharge at all.

91. Indeed, expressly to the contrary, the Plan Document sets out three bases on which a participant's contribution level is permitted to be increased, providing that "the Administrator may establish different contribution levels depending on (1) the level of Company contributions, (2) whether or not

22

Participating Employees have elected to cover Eligible Family Members and (3) the Component Plan elected by or for the Participant."

92. Imposing the nicotine surcharge would require a fourth basis to "establish different contribution levels" for participants (the use of nicotine products) that is not found in the Plan Document. As a result, Sodexo's assessment and collection of the nicotine surcharge violates the terms of the plan.

93. Though the Plan Document does incorporate by reference certain Summary Plan Description (SPD) documents that purport to authorize the nicotine surcharge, it further provides that "in the event any provision of the SPD or any other material furnished to Participants regarding the Plan is inconsistent with the terms of the Plan as set forth herein, the terms of this Plan document shall control." Adding an additional basis for a participant's contribution level differential to the three permitted by the Plan Document is inconsistent with the terms of the plan, and is therefore without effect.

94. Additionally, the terms of the plan explicitly require Sodexo to comply with all legal requirements under ERISA. The Plan Document states that "Sodexo acting as Named Fiduciary pursuant to the designation in Section 8.1 shall cause the Plan to comply with all filing, reporting, disclosure or other requirements of ERISA."

95. As alleged extensively herein, Sodexo failed to comply with the requirements of ERISA by imposing a discriminatory nicotine surcharge in violation of 29 U.S.C. § 1182 and implementing regulations.

96. As a result, Sodexo has violated the terms of the plan, and is liable to Plaintiff and the Class for all losses resulting therefrom pursuant to ERISA § 502(a)(1)(B); 29 U.S.C. § 1132(a)(1)(B).

97. Administrative Exhaustion: A plaintiff asserting a claim under ERISA § 502(a)(1)(B); 29 U.S.C. § 1132(a)(1)(B) need not comply with the prudential and

23

discretionary administrative exhaustion requirement if exhaustion would be futile, the remedy would be inadequate, the plan's claims procedure would be unreasonable, there would be no meaningful access to the internal review procedure, or the terms of the plan do not explicitly require exhaustion. Each of these exceptions are met in this case for the following reasons, individually or in combination:

a. Under the Sodexo medical plan's administrative claims appeals process, a claim can only be initiated after the receipt of a written notice of an adverse claims decision, and Plaintiff and the Class were never provided such a notice;

b. The subject matter of the claims of Plaintiff and the Class fall outside the scope of the plan's appeals process, which reviews questions of medical necessity, coverage, and the like, and not disputes concerning the costs borne by a participant to maintain coverage;

c. The administrative remedies of Plaintiff and the Class are deemed exhausted by operation of law because Sodexo's claims appeals procedures do not comply with all requirements established by 29 C.F.R. § 2590.715-2719, 29 C.F.R. § 2560.503-1, and other regulations governing internal claims procedures;

d. Plaintiff and the Class are challenging a fixed, official, *de jure* policy established by Sodexo on its face, as opposed to a discretionary interpretation of a policy made by a claims adjuster or other discrete decisionmaker, rendering an internal appeal futile;

e. The terms of the plan can be fairly read, and have been reasonably interpreted by Plaintiff and the Class, to not require exhaustion, in that they state that exhaustion of the claims procedure is a prerequisite for filing suit only "[i]n most instances" without further elaboration as to

what those instances are, and the claims at issue are ones for which administrative exhaustion would be inappropriate;

f. The claims of Plaintiff and the Class would require interpretation of ERISA's statutory requirements and implementing regulations; and

g. Other reasons to be determined based on facts found through the course of discovery.

## **REQUEST FOR RELIEF**

Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in his favor and against Sodexo as follows:

A. That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff is a proper class representative, and appoint Plaintiff's counsel as Class Counsel;

B. That the Court order Sodexo to reimburse all persons who paid the nicotine surcharge from six years prior to the filing of this Complaint to the present;

C. That the Court order disgorgement and/or restitution of all payments unlawfully assessed by Sodexo, or, alternatively, the profits earned by Sodexo in connection with its receipt of such unlawful fees;

D. That the Court grant a declaratory judgment holding that the acts of Sodexo described herein violate ERISA and applicable law, as well as the terms of the plan;

E. That the Court enter a permanent injunction against Sodexo prohibiting Sodexo from collecting a nicotine surcharge unless and until the company revises the surcharge to comply with all ERISA statutory requirements and the terms of the plan;

F.      That the Court order Sodexo to provide all accountings necessary to determine the amounts Sodexo must make good to the plan and to plan participants and beneficiaries;

G.      That the Court surcharge against Sodexo all funds it collected in violation of ERISA and the terms of the plan;

H.      That the Court find and adjudge that Sodexo is liable to make good to the plan all losses to the plan resulting from each breach of fiduciary duties, to otherwise restore the plan to the position it would have occupied but for the breaches of fiduciary duty, and grant all other proper relief authorized by 29 U.S.C. § 1109, including removal and replacement of the fiduciary;

I.      That the Court impose a constructive trust on profits received by Sodexo as a result of fiduciary breaches committed by it or for which it is liable, upon which Plaintiff and the class can make claims for equitably vested benefits;

J.      That the Court award Plaintiff and the class all damages available at law in an amount to be determined at trial;

K.      That the Court award reasonable attorneys' fees, costs, and expenses as provided by law;

L.      That the Court order the payment of interest to the extent it is allowed by law; and

M.      That the Court grant all other equitable, remedial, and legal relief as it deems just and proper under the circumstances.

Dated: March 15, 2023                    Respectfully submitted,

*/s/ Jason S. Hartley*
Jason S. Hartley (SBN# 192514)
Jason M. Lindner (SBN# 211451)
**HARTLEY LLP**
101 West Broadway, Suite 820
San Diego, CA 92101
Telephone: 619-400-5822
*hartley@hartleyllp.com*
*lindner@hartleyllp.com*

George A. Hanson (*pro hac vice*)
Alexander T. Ricke (*pro hac vice*)
Caleb J. Wagner (*pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: 816-714-7100
*hanson@stuevesiegel.com*
*ricke@stuevesiegel.com*
*wagner@stuevesiegel.com*

Ryan L. McClelland (SBN# 244871)
**MCCLELLAND LAW FIRM, P.C.**
The Flagship Building
200 Westwoods Drive
Liberty, Missouri 64068
Telephone: 816-781-0002
*ryan@mcclellandlawfirm.com*

*Counsel for Plaintiff*

27